| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | | Not For Publication |
| ------------------------------------------------------x | : | |
| In re | : | Chapter 11 |
| ENRON CORP., et al., | : | Case No. 01-16034 (AJG) |
| Reorganized Debtors. | : | (Confirmed) |
| ------------------------------------------------------x | : | |
| RUFUS T. DORSEY, IV, EXAMINER <br> FOR NEWPOWER HOLDINGS, INC., <br> AND TNPC HOLDINGS, INC., | : | |
| Plaintiff, | : | |
| v. | : | Adv. Proc. No. 04-04303 (AJG) |
| ENRON CORP., <br> ENRON NORTH AMERICA CORP., <br> ENRON ENERGY SERVICES, INC., <br> ENRON POWER MARKETING, INC., <br> ENRON ENERGY SERVICES, LLC, <br> CORTEZ ENERGY SERVICES, LLC, <br> MCGARRET I, LLC, <br> MCGARRET II, LLC, <br> MCGARRET III, LLC, and <br> EES WARRANT TRUST, | : | |
| Defendants. | : | |
| ------------------------------------------------------x | | |

**ORDER AND OPINION REGARDING MOTION OF NEW POWER EXAMINER
TO ALTER OR AMEND OPINION AND JUDGMENT, OR IN THE
ALTERNATIVE, CERTIFY ORDER UNDER RULE 54(b)**

**APPEARANCES:**

WEIL, GOTSHAL & MANGES LLP
Counsel for Reorganized Debtors
    Enron Corp. and certain of its subsidiaries and affiliates as
    Defendants

767 Fifth Avenue
New York, NY 10153

    Martin J. Bienenstock, Esq.
    Brian S. Rosen, Esq.
        Of Counsel

700 Louisiana, Suite 1600
Houston, TX 77002

    Stephen T. Loden, Esq.
        Of Counsel


PARKER, HUDSON, RAINER & DOBBS, LLP
Counsel for Plaintiff Rufus T. Dorsey, IV
    Examiner for NewPower
    Holdings, Inc. and TNPC Holdings, Inc.

1500 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, GA 30303

    Rufus T. Dorsey, IV, Esq.
    Jack C. Basham, Jr., Esq.
        Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

      Before the Court is the Motion of the Examiner to Alter or Amend Opinion and Judgment, or In the Alternative, Certify Order Under Rule 54(b), dated February 27, 2006 (the "Motion to Amend"), filed by the New Power Examiner[1] in the above-referenced adversary proceeding. The Examiner, who was appointed in the chapter 11 cases of the New Power Debtors, seeks first to have the Court alter or amend the order

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Opinion.

2

that was entered on February 17, 2006 (the "Order") in relation to this Court's Opinion Regarding Defendant's Motion to Dismiss Adversary Complaint of New Power Examiner For Failure to State a Claim, dated January 26, 2006 (the "Opinion"). Barring such relief, the Examiner seeks to have the Court amend the Order to include a certification for immediate appeal of the portion of the Order granting the Motion to Dismiss.

I.      ALTERATION OR AMENDMENT

The Examiner first requests that the Court alter or amend the Order (and thus the Opinion) so as to deny Enron's motion to dismiss the recharacterization claim based "(i) on the conclusions of the Eleventh Circuit in the Eleventh Circuit Decision, which decision was issued shortly after entry of the Opinion but before entry of the Order, and (ii) on the applicable case law regarding the requisites of a withdrawal of a proof of claim, an issue which is raised by the Court's Opinion but never briefed by either party."[2] (Mot. to Amend at 3.)

---

[2] This issue was raised in the Motion to Dismiss, and discussed during the hearing held on December 9, 2004. (See Motion to Dismiss at 5-6) ("Pursuant to the terms of the Second NewPower Settlement . . . the Enron Claims in the NewPower chapter 11 cases were deemed paid in full and Enron was required to release and withdraw all of those claims immediately, which it did. Upon satisfaction of the Enron Claims, the Master Agreement and the Second Agreement were automatically terminated, and both NewPower and Enron fully and completely released each other from all claims pursuant to the terms of the First NewPower Settlement . . . Accordingly, Enron no longer holds any unsatisfied claims in the NewPower chapter 11 cases, and the Examiner's present effort to recharacterize and subordinate those non-existent claims is moot.") (See Hr'g Tr. 14: 17 – 15: 18, Dec. 9, 2004) ("The Examiner brings these claims without so much as a mention of the fact that Enron has no claims against NewPower that can be recharacterized, because those claims were withdrawn pursuant to the settlement approved by Judge Drake. The Examiner also fails to mention that both Judge Drake and this Court made factual findings on those settlement orders that directly contradict the Examiner's present allegations. As demonstrated in the motion to dismiss, the Examiner's failure to acknowledge the impact of those settlements is fatal to his adversary complaint, because the Examiner cannot prove the facts he alleges without first reversing the settlement orders.") Furthermore, the issue has been fully addressed by the Examiner in the Motion to Amend, and, as discussed below, the Court disagrees with the Examiner's reasoning on the issue.

3

The approval of a motion to alter or amend an order under Bankruptcy Rule 9023,³ which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, "is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." *In re Bird*, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998); *see also Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (citing *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 472 (S.D.N.Y. 1996)). The burden is on the movant to show that factual matters or controlling precedent were overlooked that could have materially influenced the earlier decision. *See Cioce v. County of Westchester*, 128 Fed. Appx. 181, 185 (2d Cir. 2005); *Griffin*, 72 F. Supp. 2d at 368 (citing *Fruit of the Loom, Inc. v. American Mtg. Enters., Inc.*, 1999 U.S. Dis. LEXIS 11060, 97 Civ. 3510, at *1 (S.D.N.Y. July 22, 1999)); *Bird*, 222 B.R. at 235. Importantly, a "motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." *Bird*, 222 B.R. at 235; *see also Griffin*, 72 F. Supp. 2d at 368 (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

First, the Court disagrees with the Examiner's assertion that the withdrawal of the Claim is the "key event" with respect to each of the Court's conclusions. The Claim withdrawal is clearly central to the Court's ruling that "the claim has been withdrawn and therefore cannot be recharacterized." (Op. at 3.) However, with regard to the Court's second finding that "the Claim has been released and any cause of action to recharacterize the Claim is barred by the release" (Op. at 3), the withdrawal of the Claim

---

³ In the Motion to Amend, the Examiner cites to Bankruptcy Rule 9024 as authority for the amendment of judgments. The Court assumes the Examiner meant to cite to Bankruptcy Rule 9023, as he cited to Local Rule 9023-1(a). Bankruptcy Rule 9024 relates to relief from a judgment or order and incorporates Federal Rule of Civil Procedure 60, while Bankruptcy Rule 9023 relates to the relief sought under Federal Rule of Civil Procedure 59.

4

is not the crucial event that the Examiner asserts it to be. The Examiner states that "[t]he withdrawal is also deemed to trigger the effectiveness of the release under the First Settlement because the withdrawal is equated by the Court with 'full satisfaction' of the Claim." (Mot. to Amend at 4.) This is an incorrect interpretation of the Opinion. The Court states in the Opinion:

> [T]he release approved through the First Settlement Order did not become effective until after the New Power Petition Date, as it was not triggered until the postpetition payment of 'all principal and accrued and unpaid interest under the Note' . . . . [I]t was pursuant to the Second Settlement that the Note was deemed paid in full and all Enron's claims under the Note were satisfied. Upon such full satisfaction, the release under the First Settlement took effect, and Enron withdrew its claims and released its liens against New Power.

(Op. at 22.) The Court does not find this language to equate full satisfaction with withdrawal of the Claim. Rather, the withdrawal came about only after full satisfaction took place.

With regard to the Court's third finding that "recharacterization of the Claim is barred by res judicata" (Op. at 3), the Court again disagrees that the withdrawal of the Claim is a critical factor. The Examiner states that in the Opinion, the withdrawal is "deemed as a binding determination on the merits of the Claim." (Mot. to Amend at 4-5.) However, the Court does not view its discussion in this section of the Opinion to be the key to its res judicata finding. Rather it is a rejection of the Examiner's argument set forth in his response to the Motion to Dismiss that the Second Settlement was not a final allowance of the Claim or final approval of the Second Settlement. (See Op. at 35-36.) The Court points out that the Second Settlement Order does not act in opposition to the powers of the Examiner by allowing the Claim, but rather requires that the Claim be withdrawn. (See Op. at 35-36.) Furthermore, the Court stated in the Opinion that

5

"[w]hile the Examiner does not specifically set out which elements of res judicata have not been met, this Court will discuss the arguments raised by the Examiner in the categories to which they can most properly be assigned." (Op. at 30-31.) Thus, the fact that the Court included this discussion in this section of the Opinion does not mean that it is the critical finding, but rather that it seemed the most appropriate place to include a discussion of the Examiner's argument. Indeed, the key(s) to the Court's res judicata findings are that:

> [A]ll claims that Enron and New Power had against one another in relation to the debt under the Master Agreement have been released pursuant to the Settlements. Additionally, the First Settlement Order found that the First Settlement was the result of an arms' length negotiation, conferring res judicata status upon issues resolved under the Master Agreement. Furthermore, the recharacterization claim was not raised regarding either of the Settlements. This, together with [sic] preclusive effect of the findings in the First Settlement Order, prevents re-visitation of the issues resolved pursuant to the Settlement Orders.

(Op. at 29.)

In any case, the Court does not agree with the Examiner's interpretation of Bankruptcy Rule 3006 that for the actual withdrawal of a claim pursuant to a settlement to take place, all parties must return themselves to "the status they occupied at the time the proofs of claim were filed." (Mot. to Amend at 5.) Even if withdrawal of a claim leaves the parties involved in the position they would have been in if the claim had never been brought, such withdrawal does not change the fact that an obligation was due and was independently settled. The acts taken by a court in approving such settlements do not have to be reversed in order for a claim to be withdrawn. The case cited by the Examiner, *Smith v. Dowden*, 47 F.3d 940 (8th Cir. 1995), involves a discussion relating to whether a claimant that withdrew its proof of claim had still irrevocably submitted to

6

the jurisdiction of the bankruptcy court, and thereby waived its right under the Seventh Amendment to a trial by jury. *See id.* at 941. This case focused on the withdrawal of a claim from the standpoint of the jurisdictional consequences of such withdrawal. It does not stand for the proposition that every action taken related to the claim must be undone in order for the claim to be withdrawn. The Examiner essentially argues that in every case in which a settlement hinged on the withdrawal of the underlying claim, such withdrawal did not actually occur because the parties were not returned to their position prior to the filing of the claim. Hence, the claim still exists. This Court finds that this result is not dictated by the *Smith* decision.

Additionally, the Examiner argues that this Court should amend the Order (and thus the Opinion) based upon the conclusions contained in the decision of *Enron Corp. v The New Power Co. (In re The New Power Co.)*, 438 F.3d 1113 (11th Cir. 2006). *In re New Power* was issued subsequent to entry of the Opinion, but prior to entry of the Order.[4] The Examiner first revisits the discussion raised in his response to the Motion to Dismiss that relates to the position taken by Enron in the New Power Cases and during the appellate process in the Eleventh Circuit. The Court addressed this issue in the Opinion based upon the evidence presented in the pleadings submitted by the parties with respect to the Motion to Dismiss. This included the record of Enron's arguments made before the Georgia Bankruptcy Court and the District Court for the Northern District of Georgia. The Court finds no basis to modify its Opinion based upon the Examiner's interpretation of the way in which the Court of Appeals for the Eleventh Circuit

---

[4]  While *In re New Power* was rendered subsequent to entry of the Opinion, the Motion to Amend is based on Fed. R. Civ. P. 59(e), which applies to "judgments," which are synonymous to "appealable orders" under Fed. R. Bankr. P. 9001(7). Thus, the Court believes the Motion to Amend was correctly brought in light of the timing of the Order. *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 61 n.4 (Bankr. S.D.N.Y. 2003).

characterizes Enron's argument. The arguments made by Enron before the Eleventh Circuit were legal rationales taken to protect the interests of Enron from the proceedings in the New Power Cases. They were not admissions that any claims still existed for purposes of that process, or that there were no defenses to such process.

In its opinion, the Eleventh Circuit addressed the issues of whether "(1) the bankruptcy court lacked the statutory authority to confirm the Second Amended Plan because the modifications were material and adverse with respect to Enron's claims and interests; and (2) the modifications violate the equal treatment required by the Bankruptcy Code with respect to members of the same class of creditors." *In re New Power*, 438 F.3d at 1117. The findings of the Eleventh Circuit appear to relate to the powers of the Examiner and whether the Examiner was precluded from conducting his investigation. However, the issue of whether Enron could assert its available defenses against the Examiner does not appear to have been argued before the Eleventh Circuit. Indeed, it appears that neither the First nor the Second Settlements were presented for the Eleventh Circuit's consideration. This Court must reiterate that the Opinion does not conclude the Examiner lacked the authority to examine the Claims, but rather that the Examiner would not succeed in such efforts as a result of the defenses available to Enron under the circumstances of this case. (Op. at 20.)

Putting aside withdrawal, the Examiner states that the res judicata effect of the Second Settlement must be interpreted in accordance with Eleventh Circuit precedent under *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990). While the Examiner has previously made this assertion in his response to the Motion to Dismiss, he has now for the first time presented this Court with case law to support his argument. The

8

Examiner cites to *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir. 1962), *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997), and *In re Tippins*, 221 B.R. 11, 19 (Bankr. N.D. Ala. 1990) to support his argument that a court should determine the scope of its own judgment. However, the reasoning of those cases should not be divorced from their factual background. Specifically, *Hettinger*, *Hillary* and *Tippins* involved discussions of whether to apply state law or federal law with regard to the res judicata effect of a judgment.

*Hettinger* and *Hillary* involved diversity actions. In *Hettinger*, the court held that federal law, not California law, determined the res judicata effects of a dismissal pursuant to Federal Rule 41(b). *Hettinger*, 303 F.2d at 340. In *Hillary*, the court held that the state law used in making the rule of decision should govern the res judicata effect of a judgment in a Louisiana federal district court. *Hillary*, 123 F.3d at 1043.

In *Tippins*, the debtors filed a state court action in Alabama after the Bankruptcy Court for the Northern District of Alabama had entered a confirmation order. *Tippins*, 221 B.R. at 14-15. The *Tippins* court considered the res judicata effect of a confirmation order on a state court action, and was concerned that federal law should determine the res judicata effect of a federal judgment, as opposed to the law of the state in which that court sits. *Tippins*, 221 B.R. at 18-19.

Thus, all three cases cited by the Examiner involve a choice between differing laws. Here, the Examiner is not contending that state law should apply over federal law or federal law over state law, but rather that the federal common law on res judicata is not unitary and should be applied in accordance with the law of the circuit in which the particular order was entered. (See Hr'g Tr. 5: 9-21, Mar. 30, 2006.) The issue before the

9

Court does not concern the choice between different laws, but rather the choice between different interpretations of federal common law. Under the unitary principle there is but one law, and a court is bound to the law as interpreted by the circuit in which that court sits. Ultimately the parties may seek to reconcile any conflict in interpretation among the circuits through the appellate process.

Furthermore, even accepting the Examiner's argument, the res judicata effect of the First Settlement Order must still be determined in accordance with the law of this Circuit. The Examiner has in effect admitted as much. (See Hr'g Tr. 6: 13 – 17, Mar. 30, 2006) ("Your Honor, I don't disagree with what the Court is stating about the First Settlement Order. It was issued and issued in the Second Circuit, and its legal effect, I believe is controlled by the Second Circuit law.") The significance of the findings in the First Settlement Order is made evident in the Opinion. (See Op. at 29, 39). The Second Settlement Order is not cited by the Court for the preclusive effect of its findings, but rather for the opportunity it presented for the Examiner to object to its approval and the consequences this had on implementation of the First Settlement. In this way, the Second Settlement Order contributes to the res judicata analysis in that it presented an opportunity to raise an issue. As stated in the Opinion, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (Op. at 31.) (quoting *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997)). Thus, the Second Settlement Order's finality allows the First Settlement to become effective and, if the First Settlement Order did not have preclusive effect through its own finality, gives preclusive effect to the findings in the First Settlement. This, in

10

turn, creates a res judicata effect with regard to the issue of recharacterization. However, even if the Court focused on the First Settlement Order prior to entry of the Second Settlement Order, arguably under recent Second Circuit case law, even if the First Settlement had never gone into effect, the First Settlement Order became preclusive at the point when it became a final, non-appealable order. *See The Bennett Funding Group, Inc. v. Bredeen*, 439 F.3d 155 (2d Cir. 2006) (finality as to appellate rights). Additionally, the Examiner's argument does not touch on the release of the claims, and so even if correct, would not necessitate the Court modifying its Opinion regarding res judicata. As stated above, even under the Examiner's rationale, the preclusive effect of the First Settlement would be interpreted under Second Circuit precedent.

II.   CERTIFICATION

Alternatively, the Examiner requests that the Court, pursuant to Bankruptcy Rule 7054, which incorporates Rule 54(b) of the Federal Rules of Civil Procedure, certify for immediate appeal the portion of the Opinion and Order that granted dismissal of the Examiner's recharacterization claim. If certification is granted, the Examiner requests that this Court continue the existing stay of the adversary proceeding initiated by the Complaint. However, the Examiner further requests that the Court rule on the Defendants' Motion for Entry of an Order Enforcing The Automatic Stay and The Confirmation Order and Imposing Sanctions and Civil Penalties for Knowing and Willful Violations of The Automatic Stay and This Court's Prior Orders, dated April 13, 2005 (the "Sanctions Motion"), so that the Examiner can proceed against Enron's equity interests in the New Power Cases.

11

Bankruptcy Rule 7054 states that Rule 54(b) of the Federal Rules of Civil Procedure, which concerns judgments involving multiple claims or multiple parties, applies in adversary proceedings. *See* FED. R. BANK. P. 7054. Rule 54(b) states:

> When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicatesy all the claims and the rights and liabilities of all the parties.

FED. R. CIV. P. 54(b).

"The standards for a Rule 54(b) certification are stringent in this Circuit." *Northpark Nat. Bank v. Bankers Trust Co.*, 572 F.Supp 520, 523 (S.D.N.Y. 1983). In this Circuit, the power of the Court to grant a Rule 54(b) certification is to be reserved for those rare cases where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *El-Marzouki Establishment v. Environmental Research and Dev., Inc.*, 94 F.R.D. 661, 662 (S.D.N.Y. 1982) (internal citations omitted); *see also Arlinghaus v. Ritenour*, 543 F.2d 461, 464 n.1 (2d Cir. 1976) ("[T]he Advisory Committee's note to the 1946 amendment of Rule 54(b), which stated that the certificate provision was intended only to confer 'a discretionary power to afford a remedy in the infrequent harsh case . . . .'"); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 274-75 (2d Cir. 1968) ("The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice") (internal citations omitted). Certification is certainly not to be granted "routinely or as a courtesy or accommodation

12

to counsel." *Brunswick v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978) ("[E]ntry of final judgment under Rule 54(b) is not to be done lightly, particularly when the action remains pending as to all parties.").

The Court has reviewed the Sanctions Motion and the opposing papers. Although the Court has not heard arguments on the Sanctions Motion and the outcome on that matter is yet to be determined, the Debtors have set forth a prima facie case. The cases cited in opposition by the Examiner do not address the consequence of another court's fiduciary actively participating in a confirmation process, thereby submitting to such court's jurisdiction, and thereafter disregarding the order of that court especially where that order addressed the very issues on which that fiduciary rests his *Barton*[5] doctrine contention. Here, the Examiner previously objected to the Confirmation Order, arguing that the injunction (the "Plan Injunction")[6] contained in the Debtors' Plan should not apply to actions of the Examiner. This objection was denied pursuant to the Findings of Fact and Conclusions of Law Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and Related Relief, dated July 15, 2004 (the "Findings of Fact"). This Court stated in the Findings of Fact that "the objection of the NewPower Examiner should be overruled because (a) the NewPower Examiner was appointed in the NewPower Cases, not the Debtors' Chapter 11 Cases, and the confirmation of the Plan does not affect such appointment, (b) res judicata and collateral estoppel appear to preclude the NewPower Examiner from pursuing a re-characterization of the settlement payment, and (c) the

---

[5] *Barton v. Barbour*, 104 U.S. 126 (1881).
[6] Section 42.4 of the Debtors' chapter 11 plan (the "Plan") states that "all Persons or Entities who have held, hold or may hold Claims . . . are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action of other proceeding of any kind on any such Claim. (Plan § 42.4.)

13

claim objection process, and not confirmation of the Plan, is the appropriate platform for the determination of this dispute."[7] Whether these determinations are correct is not an issue related to the Sanctions Motion. The Examiner chose not to appeal the denial, and the ruling is the law of the case. It is arguable that the *Barton*[8] line of cases does not support the Examiner, in that the Examiner cannot ignore a ruling that was made on the issues he originally brought before this Court. This situation does not involve a private litigant asserting its rights to fees, for example, as in the case of *Solar Fin. Servs., Inc. v. Price Waterhouse, LLP (In re Solar Fin. Servs., Inc.)*, 255 B.R. 801, 805-06 (Bankr. S.D. Fla. 2000). Rather, in this case an order of a court is at issue. The question is whether a fiduciary of another court has the right under the *Barton* doctrine to ignore such order and thereby require the court that issued the order to seek the permission of the fiduciary's court so as to enforce its own order. Whether economic sanctions are appropriate or any relief would be limited to an injunction is a possible consequence of the interplay between the principles of the *Barton* doctrine and the circumstances presented herein. Nonetheless, the broad application of the *Barton* doctrine is, based upon the pleadings as filed to date, not likely. It is important to note that the Court's findings with respect to the effect of the Plan and related confirmation order on the Examiner were made in response to the Examiner's direct request to this Court to address the issue.[9] Though the

---

[7] At the time the Examiner's objection to confirmation was argued, the Court viewed these issues as concerning the Examiner's ability to bring an action against the Enron Debtors in a different court. To the extent the Examiner disagreed with the ruling, he had an obligation to appeal that order. Not having appealed, the Examiner is bound by the ruling of this Court and cannot argue that this Court is unable to enforce its ruling, especially in light of the fact that the Examiner originally sought that a ruling be made on these issues.

[8] It is important to note that the *Barton* doctrine was not cited by the Examiner in his initial objection to confirmation of the Debtors' Plan.

[9] The Examiner suggests that it is more logical to bring the action to disallow the equity prior to litigating the equitable subordination claim. If that were truly a concern of the Examiner, and he believed he was not prevented by the automatic stay from bringing the disallowance action, the Court questions why the

14

Court does not rule on the merits, in light of the fact that the Examiner submitted fully to this Court's jurisdiction and sought a ruling on the issue, and yet subsequently acted in contravention to the Plan Injunction and the automatic stay under section 362 of the Bankruptcy Code,[10] the Court concludes that there is a strong likelihood the litigation on equitable subordination will go forward in this Court. There does not appear to be efficiency or judicial economy in the process envisioned by the Examiner, since determination of the equitable subordination issue would be stayed until the Examiner pursued the appeals process to its conclusion. This length of delay would certainly restrain the ability of the parties to properly conduct discovery in relation to these claims. (See Hr'g Tr. 43: 19 – 23, Mar. 30, 2006.) This Court finds it is more appropriate for the appeal to go forward at the conclusion of the matters before this Court, as it can be assumed that any decision made by this Court with respect to the equitable subordination count of the Complaint will also be appealed. (See Hr'g Tr. 42: 16 – 20, Mar. 30, 2006.) The Court finds that a mediated resolution is in the best interest of all parties, and until such time as the Mediator determines that such continued efforts in that regard are not warranted, that process should continue and the stay ordered by this Court should remain in effect.

---

Examiner did not bring an action for disallowance of equity prior to requesting equitable subordination from this Court, and thereby submitting to this Court's jurisdiction. Furthermore, it appears that the disallowance of the equity will essentially involve the same proof as is put forward with respect to the equitable subordination claim.

[10] Section 42.5 of the Plan states that "all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 42.17 of the Plan or such other Final Order of the Bankruptcy Court." (Plan § 42.5.)

III.   CONCLUSION

Based upon the foregoing, the requests of the Examiner for amendment of the Order and for certification are denied.  It is hereby

ORDERED that the Motion to Amend is denied in its entirety; and it is further

ORDERED that this Court's stay remains in effect in all respects.

Dated: New York, New York
       April 10, 2006

                                    s/Arthur J. Gonzalez
                                    UNITED STATES BANKRUPTCY JUDGE